UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE MITCHELL,<br><br>      Plaintiff,<br><br> v.<br><br>SPENCER FOX; MICHAEL KERR; JASON GAEDE; and JOHN DOE WELLAN,<br><br>      Defendants. | NO: 4:12-CV-5150-RMP<br><br>ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT |

Before the Court are Defendants' Motion for Summary Judgment, ECF No. 38, and Motion to Strike, ECF No. 48. The Court has reviewed all relevant filings and is fully informed.

## BACKGROUND

Plaintiff Dale Mitchell is an inmate at the Coyote Ridge Correction Center ("CRCC"). Plaintiff's claims relate to two separate searches by correctional officers.

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 1

On November 14, 2011, Plaintiff asserts that Defendants Correctional Officers Fox and Kerr recklessly emptied two property boxes containing legal documents and religious material in Plaintiff's cell during an allegedly random cell search. ECF No. 6 at 5. As a result of the search, Plaintiff contends that his Qur'an was damaged beyond repair. Because his Qur'an was destroyed, Plaintiff claims that he is "unable to read, study or pursue obligatory tenet of his Islamic faith." ECF No. 6 at 5.

Plaintiff also claims that on April 1, 2012, Defendants Correctional Officers Wellan and Gaede conducted an allegedly random cell search that lasted approximately one hour. ECF No. 6 at 6. According to Plaintiff, the officers searched through religious materials, read legal documents, and recklessly handled his personal property. ECF No. 6 at 6.

At the conclusion of the 2012 search, Plaintiff asserts that two plastic bags containing personal and religious property were removed from his cell. ECF No. 6 at 6. Among other items, Plaintiff claims that Defendants Wellan and Gaede took two Islamic prayer books. ECF No. 6 at 7. A report prepared after the search notes that two "altered books" were confiscated, but the books are not further identified. ECF No. 38-2, Attach. D at 1. Plaintiff claims that he filed a tort claim, which was dismissed. ECF No. 6 at 7.

According to Plaintiff, the chaplain's office at CRCC does not issue religious materials or have a Qur'an or Islamic prayer books. ECF No. 46-1 at 3. However, Eric Askren, a chaplain at CRCC, submitted a declaration denying Plaintiff's statement that Plaintiff lacks access to another Qur'an, noting that Plaintiff may obtain a Qur'an from him for free and that Plaintiff has access to an extensive library of Islamic books and materials maintained by Muslim offenders. ECF No. 47-1 at 43.

In his response to Askren's declaration, Plaintiff asserts that the chaplain has not given him a Qur'an or contacted him, ECF No. 56 at 3, but does not deny Askren's statement that the chaplain provides Islamic texts. Plaintiff claims that he was originally told that he would be placed on a waiting list to receive a donated Qur'an, ECF No. 57 at 2, but in response to Askren's explanation that the chaplain could give Plaintiff a Qur'an for free, Plaintiff appears to be contending that Defendants must contact him and offer him religious texts, *see* ECF No. 57 at 2 ("The defendants is now alleged there is no waiting lists, that the chaplain has Qu'rans to issue, as of this date, I have not heard from the chaplains office or been provided with a Qu'ran or prayer books."). *See also* ECF No. 56 at 3 ("The defendants has a duty to upon destroying, seizing or discovering altered or destroyed religious items, to immediately contact and present items to the chaplains office where they will be properly dealt with.").

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 3

Plaintiff alleges that Defendants violated the Religious Land Use and Institutionalized Persons Act and his First Amendment rights by destroying his Qur'an and seizing two prayer books. ECF No. 6. According to Plaintiff, he needs these religious books "to maintain proper Islamic religious worship, practice, correct knowledge and guidance." ECF No. 46-1 at 1. Plaintiff asserts that in his cell he would "perform obligatory prayer five times a day and study the holy Qur'an for guidance and Islamic knowledge." ECF No. 46-1 at 1.

Plaintiff seeks declaratory and monetary relief. ECF No. 6 at 10-11. Defendants move for summary judgment as to all claims. ECF No. 38. Defendants also move to strike portions of two declarations that Plaintiff attached to his response to the motion for summary judgment. ECF No. 48.

In an earlier order, the Court granted in part Plaintiff's motion to strike a declaration that Defendants attached to their reply in support of the motion for summary judgment. ECF No. 53. Because Defendants included new evidence with their reply, the Court granted Plaintiff's request to submit additional evidence and briefing in response.

The Court first considers Defendants' motion to strike because declarations supporting or opposing a motion for summary judgment must set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4).

1.  *Defendants' Motion to Strike, ECF No. 48*

Defendants move to strike portions of the declarations from Larry Givens and Chris Scales, which Plaintiff filed in opposition to Defendants' motion for summary judgment.

Givens declares that in July 2011 he was housed at CRCC and attended Islamic services on numerous occasions with Plaintiff. ECF No. 46-3 at 1. According to Givens, he and Plaintiff would study together from Plaintiff's Qur'an.

Defendants argue that paragraphs 5, 6, and 8 of Givens's declaration should be stricken under Federal Rule of Evidence 602 because they lack sufficient foundation. ECF No. 48 at 2. Givens's statement in paragraph 5, that Plaintiff kept his Qur'an wrapped in a towel or prayer rug and stored it in a safe place, will be stricken, because it does not have an adequate foundation since Givens apparently did not share a cell with Plaintiff or provide in his declaration an alternative basis to establish a foundation for personal knowledge of these facts. Paragraph 6, however, in which Givens declares that the Qur'an was not damaged when he studied it with Plaintiff, will not be stricken because it is supported by a sufficient basis since Givens asserts that he had direct contact with the book. Regarding paragraph 8, Givens may testify from his personal knowledge as to the condition of the book sometime after the November 2011 search, but any assertion

that Defendants damaged the book would apparently rely on inadmissible hearsay and therefore be stricken.

Paragraph 7, relating that Givens first heard from Plaintiff's cellmate that guards destroyed Plaintiff's Qur'an, is inadmissible hearsay and will be stricken. *See* Fed. R. Evid. 801, 802.

In paragraph 9, Givens declares that Plaintiff was stressed out because of what happened to his Qur'an. A lay witness may testify as to his opinion under Federal Rule of Evidence 701. Therefore, the statement in paragraph 9 is admissible since it would be based on Givens' personal knowledge.

Accordingly, paragraphs 6 and 9 of Givens's declaration are admissible, paragraphs 5 and 7 are not. Paragraph 8 is admissible only as to the condition of the book, but not as to the cause of any damage.

Turning to Scales's declaration, Defendants argue that multiple paragraphs should be stricken. Scales was not Plaintiff's cellmate at the time of the November 2011 search, but he asserts that he was in the day room during the search and that he observed the condition of Plaintiff's cell after the search was over. ECF No. 46-2 at 1. Scales claims that he was Plaintiff's cellmate at the time of the second search. ECF No. 46-2 at 2.

Defendants request the Court to strike paragraphs 5 and 6 of Scales's declaration because he could not have witnessed the November 2011 search or the

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 6

condition of Plaintiff's cell after the search.  For purposes of summary judgment, the Court must view the facts in the light most favorable to Plaintiff.  *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  Scales does not state that he witnessed the search but rather that he saw the condition of Plaintiff's cell after the search was completed.  *See* ECF No. 46-2 at 1-2.  Without some additional evidence challenging whether a prisoner can observe the condition of another prisoner's cell after a search, the Court assumes that Scales's statements are true.  Paragraphs 5 and 6 are admissible for purposes of summary judgment.

Defendants' challenges to paragraphs 7, 9, and 14, pertaining to the condition of Plaintiff's Qur'an before and after the November 2011 search and to Scales's observations of the search in progress, are also based on conflicting statements in the parties' declarations.  For purposes of summary judgment and viewing the facts in the light most favorable to the nonmoving party, the Court finds that these paragraphs are admissible.

In paragraph 8, Scales states that Plaintiff was distraught and that Scales and others assured him that they would find him a new Qur'an.  Similar to Givens's statement regarding Plaintiff's emotional condition, this observation is an admissible opinion of a lay witness based on the witness's personal knowledge.  *See* Fed. R. Evid. 701.

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 7

Scales's assertion in paragraph 10 that he is aware that Plaintiff filed grievances appears to be based on hearsay evidence. Therefore, paragraph 10 is inadmissible. *See* Fed. R. Evid. 801, 802.

Regarding paragraph 18, Defendants claim that Scales failed to establish a basis for personal knowledge of the presence of Plaintiff's prayer books in the cell and Plaintiff's use of the books. *See* Fed. R. Evid. 602. However, Scales states in his declaration that he shared a cell with Plaintiff at the time of the second search, which would support a sufficient basis for this information. Paragraph 18 is admissible.

In sum, paragraph 10 is inadmissible, but the Court will properly consider the remainder of the challenged statements in Scales's declaration when ruling on Defendants' motion for summary judgment.

*2. Defendants' Motion for Summary Judgment, ECF No. 38*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *T.W. Elec. Serv.*, 809 F.2d at 630. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of a material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv.*, 809 F.2d at 630 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The mere existence of a scintilla of evidence is insufficient to establish a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Id.* at 249, 255. In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631-32.

In an earlier order, the Court dismissed Plaintiff's assertions of Fourth, Eighth, and Fourteenth Amendment due process violations.  ECF No. 7 at 5.  Accordingly, Defendants' request for summary judgment regarding Plaintiff's claim under the Fourteenth Amendment, ECF No. 38 at 17-19, is denied as moot.

### a. The Religious Land Use and Institutionalized Persons Act (RLUIPA)

Defendants assert that Plaintiff has failed to establish a claim under RLUIPA.  RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. § 2000cc-1(a)(1).

To state a prima facie case under RLUIPA, a plaintiff must show that a regulation imposes a substantial burden on his religious exercise.  *See Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005).  In the context of a land use suit under RLUIPA, the Ninth Circuit has held that "for a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent.  That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).  *See also*

*Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (discussing this definition of "substantial burden" in the context of a prisoner's RLUIPA claim).

Viewing the facts in the light most favorable to Plaintiff, Defendants Fox and Kerr damaged Plaintiff's only copy of the Qur'an, and the Qur'an was later taken from Plaintiff. ECF No. 46-1 at 2-3.[1] According to Plaintiff's declaration, Defendants Wellan and Gaede seized Plaintiff's two prayer books during the April 2012 search. ECF No. 46-1 at 3. Plaintiff claims that he has been unable to maintain his five daily prayers and has "been forced to modify and abandon [his] prayers, practices and beliefs." ECF No. 46-1 at 3-4.

However, viewing all facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not shown that there is a genuine dispute regarding whether Defendants placed a substantial burden on Plaintiff's religious exercise. In response to Chaplain Askren's declaration that the Chaplain has copies of the Qur'an available and free to inmates, Plaintiff asserts that the Chaplain has not provided him with a Qur'an or contacted him, ECF No. 56 at 3, but Plaintiff apparently concedes that he could access the materials if he requested them.

---

[1] Defendants claim that Plaintiff had multiple copies of the Qur'an in his cell at the time of the November 2011 search, including one copy that was already damaged. ECF No. 47-1 at 20. According to Defendants, all of Plaintiff's property was handled with care. ECF No. 47-1 at 20. For purposes of summary judgment, the Court views the evidence in the light most favorable to Plaintiff and does not determine which account is true.

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 11

Plaintiff claims that he was originally told that he would be placed on a waiting list to receive a donated Qur'an, but in response to Chaplain Askren's statement that the Chaplain is unaware of any waiting list and could give Plaintiff a Qur'an for free, Plaintiff appears to contend that Defendants must contact him and offer him the religious texts, *see* ECF No. 57 at 2 ("The defendants is now alleged there is no waiting lists, that the chaplain has Qu'rans to issue, as of this date, I have not heard from the chaplains office or been provided with a Qu'ran or prayer books."). *See* ECF No. 56 at 3 ("The defendants has a duty to upon destroying, seizing or discovering altered or destroyed religious items, to immediately contact and present items to the chaplains office where they will be properly dealt with.").

Plaintiff's apparent concession that he could obtain religious texts from Chaplain Askren is also supported by the fact that Plaintiff seeks only monetary and declaratory relief, not an injunction ordering CRCC to provide him with the books. ECF No. 6 at 10-11. The Court finds that the necessity of requesting religious materials is not a significant enough burden to implicate RLUIPA.

Moreover, Defendants would not be liable under RLUIPA for monetary damages in their official or individual capacities, as Plaintiff has requested in his Complaint.

It is established that Plaintiff may not recover monetary damages from Defendants in their official capacities for the alleged RLUIPA violations.

*Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011); *Holley v. California Dep't of Corr., et al.*, 599 F.3d 1108, 1112 (9th Cir. 2010).

The Ninth Circuit has not yet decided whether RLUIPA authorizes money damages against state actors in their individual capacities. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 n.3 (9th Cir. 2011). The Fourth, Fifth, Seventh, and Eleventh Circuits, however, have held that RLUIPA does not allow claims against state actors in their individual capacities. *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 187-88 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272-73 (11th Cir. 2007) *abrogated on other grounds by Sossamon*, 131 S. Ct. 1651. A number of district courts in this circuit have come to the same conclusion. *Mahone v. Pierce County*, 2011 WL 3298898, *5 (W.D. Wash. 2011); *Florer v. Bales-Johnson*, 725 F. Supp.2d 1185, 1205-06 (W.D. Wash. 2010); *Sokolsky v. Voss*, 2010 WL 2991522, *4 (E.D. Cal. 2010); *Hypolite v. CDCR*, 2010 WL 1729736, *5 (E.D. Cal. 2010); *Alvarez v. Hill*, 2010 WL 582217, *10-11 (D.Or. 2010); *Brown v. Vail*, 2009 WL 2253334 at *8 (E.D. Wash. 2009).

The Court agrees that RLUIPA does not allow claims for money damages for individual-capacity claims. The Ninth Circuit upheld RLUIPA as a valid exercise of Congress's Spending Clause authority. *Mayweathers v. Newland*, 314

F.3d 1062, 1066 (9th Cir. 2002).  As the Eleventh Circuit reasoned in *Smith*, Spending Clause legislation is not legislation in its operation but operates like a contract.  502 F.3d at 1273-75.  *See also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  Individual RLUIPA defendants are not parties to the contract in their individual capacities, and therefore only the grant recipient, the state, may be liable for its violation.  *Smith*, 502 F.3d 1255, 1273-75.  *See also Nelson*, 570 F.3d at 889 ("Construing RLUIPA to provide for damages actions against officials in their individual capacities would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause.").[2]

In addition to monetary damages, Plaintiff seeks declaratory relief.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village, Cal.*, 333 U.S. 426, 431 (1948); *see also Hewitt v. Helms*, 482 U.S. 755, 762-63 (1987).   "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*,

---

[2] RLUIPA invokes federal authority under both the Spending Clause and the Commerce Clause, *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005), but Plaintiff's claims have no apparent connection to interstate commerce.  Therefore, RLUIPA's potential application should be considered under the Spending Clause.  *See Nelson*, 570 F.3d at 886.

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 14

759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) (per curiam); *see also L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992); *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987).

A declaratory judgment would neither compensate Plaintiff for his loss nor compel Defendants to replace the religious texts, which Plaintiff does not request the Court to order. The Court finds that declaratory relief would not serve a useful purpose.

Accordingly, because Plaintiff has not shown that there is a genuine issue of material fact for trial and is not entitled to monetary or declaratory relief from Defendants under RLUIPA, the Court grants Defendants' motion for summary judgment on Plaintiff's RLUIPA claim.

b. *The First Amendment*

Plaintiff also claims that Defendants violated his rights under the Free Exercise Clause of the First Amendment. Inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Cruz v. Beto*, 405 U.S. 319 (1972) (per curiam)). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).

To implicate the Free Exercise Clause, a belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial . . . .'" *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (quoting *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)) *overruled on other grounds by Shakur*, 514 F.3d at 884-85.

Defendants claim that summary judgment on Plaintiff's First Amendment claim is appropriate because Plaintiff cannot show that Defendants substantially burdened his practice of Islam. ECF No. 38 at 15-17. The Court agrees. As discussed above, Plaintiff has not established that there is a genuine issue of material fact regarding whether Defendants imposed a substantial burden on his religious practice. The Court grants Defendants' motion for summary judgment on Plaintiff's First Amendment claim.

Defendants also argue that Plaintiff's actions merit a "strike" under a statute limiting legal claims by prisoners who have brought frivolous lawsuits. ECF No. 47 at 9. The statute prohibits a prisoner from bringing civil actions if, on three or more prior occasions, the prisoner has brought an action that was dismissed on grounds that it was frivolous, malicious, or failed to state a claim. 28 U.S.C. §

1915(g).  The Court declines to find that Plaintiff's action was "frivolous, malicious, or failed to state a claim" and merits a strike under Section 1915(g).

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Strike, **ECF No. 48**, is **GRANTED IN PART** and **DENIED IN PART**, as discussed above.

2. Defendants' Motion for Summary Judgment, **ECF No. 38**, is **GRANTED IN PART** and **DENIED IN PART**:

    a. Defendants' request for summary judgment on Plaintiff's Fourteenth Amendment claim is **DENIED AS MOOT**,

    b. Defendants' motion for summary judgment on Plaintiff's RLUIPA and First Amendment claims is **GRANTED**.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this order, enter judgment accordingly, provide copies to counsel and to Plaintiff, and to **CLOSE** this file.

**DATED** this 4th day of February 2014.

 *s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER REGARDING DEFENDANTS' MOTIONS TO STRIKE AND FOR SUMMARY JUDGMENT ~ 17